UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTOPHER M. MACY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 1:12-cv-00259-TWP-MJD |
| Lt. JEREMY ASHBY, S. MEYERS Officer, WALTER PETERSON, | ) ) ) ) |
| Defendants. | ) |

**ENTRY DISCUSSING CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on the parties' cross-motions for summary judgment. Plaintiff Christopher M. Macy ("Mr. Macy"), a prisoner incarcerated at the Pendleton Correctional Facility ("Pendleton"), filed this civil action. The claim remaining for resolution is whether defendants Officer Meyer (misspelled "Meyers" in the complaint), Lt. Ashby, and Internal Affairs Officer Walter Peterson ("Officer Peterson") (collectively the "Defendants") violated Mr. Macy's First Amendment Rights by confiscating Mr. Macy's diary. (Dkt. 9.) Mr. Macy seeks money damages, specifically the cost to replace the journal and $50,000.00 for emotional damages. (Dkt. 1 at p. 7.) Mr. Macy's claims are brought pursuant to 42 U.S.C. § 1983. For the reasons explained in this Entry, the Defendants' Motion for Summary Judgment (Dkt. 46) is **GRANTED** and Mr. Macy's Motion for Summary Judgment (Dkt. 40) is **DENIED**. Mr. Macy's motion to hold defendants in contempt (Dkt. 57) is also **DENIED.**

### I. FACTUAL BACKGROUND

The following facts are undisputed and pertinent to the pending motions.

1

Mr. Macy is an Indiana state prisoner who has been incarcerated at Pendleton since April of 2009. On September 2, 2011, Mr. Macy's cell was searched as part of a routine shakedown of several offenders' cells at Pendleton. Officer Meyer participated in the shakedown of Mr. Macy's cell to search for contraband or other prohibited property. Officer Meyer found Mr. Macy's journal in his cell and read it to determine what it was and whether it was permitted property. According to Officer Meyer's testimony, Mr. Macy's journal contained the statement that Mr. Macy wanted to stab a correctional facility staff member. Officer Meyer considered that statement to be a threat against the safety and security of the facility. Officer Meyer testified that Mr. Macy's journal was confiscated because it represented a threat to the facility's security and because it threatened staff with violence.[1]

On September 2, 2011, Mr. Macy received a notice of confiscated property informing him that Officer Meyer had confiscated his journal because it is "unauthorized literature."

## II. STANDARD OF REVIEW

"Summary judgment is appropriate where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

---

[1] Mr. Macy has a somewhat different view of the contents of the journal. He states that his journal is for personal use as a rehabilitative tool and does not contain threats of harm toward facility staff in any manner. Dkt. 51 at p. 2. Mr. Macy states that the journal contained his observations and complaints regarding the treatment of offenders by staff and explained that the staff created an environment which led to prison officials and guards being injured and beaten. He stated "that if the conduct by staff continued that more staff injuries would occur." Dkt. 56 at p. 5; *see also* Dkt. 55 at p.1. Further, the journal was a "tool to communicate and relieve the unwanted and unnecessary angry feelings." Dkt. 56 at p. 2. Mr. Macy's view, however, is not supported by admissible evidence. For example, none of Mr. Macy's assertions regarding the content of the journal appear in his affidavit. *See* Dkt. 42. Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Proc. 56(c)(1)(A). As a result, there is no admissible evidence to support Mr. Macy's version of the facts.

of law.'" *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005) (*quoting* Rule 56(c) of the *Federal Rules of Civil Procedure*). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims, not the weight or credibility of that evidence, both of which are assessments reserved for the trier of fact. *See Schacht v. Wis. Dep't of Corrections,* 175 F.3d 497, 504 (7th Cir. 1999). Indeed, the existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact. *R.J. Codman Derailment Serv., Inc. v. Int'l Union of Operating Eng.'s.,* 335 F.3d 643, 647 (7th Cir. 2003). Rather, the process of taking the facts in the light most favorable to the nonmoving, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *Oregon v. Arbitration Forums, Ins.*, 246 F.3d 975, 983 (7th Cir. 2001) (*quoting Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

### III. DISCUSSION

**A. Relief Sought**

Mr. Macy alleges that the defendants violated his First Amendment Rights when they confiscated his journal. As a preliminary matter, the Court notes that the only relief sought in this action is money damages. Specifically, Mr. Macy seeks $50,000.00 for "emotional personal loss

and invasion of 1st Amend" and $16.20 in material losses (based on approximately 4 reams of typing paper at $4.05 each). *See* Dkt. 1-1 at pgs. 2 and 5.

First, the claim for emotional injuries in the amount of $50,000.00 is not feasible because "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e)). There is no physical injury alleged in this action, thus money damages to compensate Mr. Macy for his emotional damages are simply not available.

Second, the claim for reimbursement based on the physical loss of the journal is also not available in this action. *See* dkt. 9 at p. 3 (dismissing any claim based on the Fourteenth Amendment). The reason for this finding is that such a claim is better characterized as a deprivation of property claim, for which Mr. Macy may seek relief through state law. *See Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010). In other words, that relief should be sought (if at all) in a separate state court action. With these limitations acknowledged, the Court now turns to the merits of the claims alleged.

**B. First Amendment**

Prisoners have a First Amendment right to free speech. *See Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000). However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Id.* Legitimate penological

objectives include crime deterrence, prisoner rehabilitation, and internal prison security. *Id.* at 822-23.

The First Amendment does not entitle prisoners to threaten staff members (either verbally or in written form) because those threats necessarily impact the order and safety of the prison. The Seventh Circuit has generally deferred to the professional judgment of prison administrators about the effect of inmate speech on prison safety. *See Turner v. Pollard*, 2014 WL 1706175, *3 (7th Cir. May 1, 2014). Thus, prison officials have been permitted to suppress material or activities that they reasonably believe encourages unrest and disrespect of staff. *Id.* (*citing Van den Bosch v. Raemisch*, 658 F.3d 778, 788 (7th Cir. 2011)). There is a valid, rational connection between confiscating prohibited property that contains threats and promoting the order, safety, and security of a correctional facility. *See Turner v. Safley*, 482 U.S. 78, 89, (1987) (restrictions on prisoners' speech are constitutional if they are reasonably related to legitimate penological interests).

### C. Mr. Macy's Motion for Summary Judgment

Mr. Macy seeks summary judgment on his claim that Defendants Officer Meyer, Lt. Ashby, and Officer Peterson violated his First Amendment rights by confiscating his journal. However, when the facts are considered in the light most favorable to the defendants, the evidence reflects that Mr. Macy's journal was confiscated because it represented a threat to the facility's security and because it threatened staff with violence. Under these circumstances it was reasonable to confiscate the journal and there was no First Amendment violation. Accordingly, Mr. Macy is not entitled to judgment as a matter of law and his motion for summary judgment (Dkt. 40) is **DENIED.**

### D. Defendants' Motion for Summary Judgment

The Defendants also seek summary judgment on the claim alleged against them. They argue that they are entitled to summary judgment because Mr. Macy's journal contained violent threats against Pendleton staff such that the journal was not entitled to First Amendment protections. In addition, they argue that they are entitled to qualified immunity for their conduct.

The evidence reflects that Officer Meyer read Mr. Macy's journal which contained the statement that Mr. Macy wanted to stab a correctional facility staff member. Officer Meyer considered that statement to be a threat against staff and a threat against the safety and security of the facility and staff members generally. Mr. Macy disputes that the journal contained threats against staff. However, Mr. Macy has not presented any admissible evidence to dispute Officer Meyer's testimony that the journal contained threats against staff. This failure to properly dispute the defendants' factual assertion results in Officer Meyer's testimony being considered undisputed and the grant of summary judgment. Fed. R. Civ. Proc. 56(e).

Of course (as Mr. Macy points out), the easiest way to determine the contents of the journal would be to consider the journal itself, but the journal has been lost or destroyed. There is no evidence as to what happened to the journal after it was confiscated in 2011. On July 31, 2012, Mr. Macy requested that the journal be preserved due to this pending litigation. This Court directed the defendants to make reasonable efforts to obtain the journal and make sure that it was not destroyed or altered. (*See* Dkt. 29.) Pendleton officials reportedly inquired with staff members regarding the journal, but no staff member recalled ever receiving the journal or knowing where it would be. The defendants stated that they do not recall receiving the journal after the initial shakedown nor do they know its location. (*See* Dkt. 53, Report on Journal.) Under these circumstances, the defendants are not in violation of a Court order and Mr. Macy's

motion to hold the defendants in contempt for failing to preserve the journal (Dkt. 59) must be **DENIED**.

Even if Mr. Macy's journal only contained the language he suggests, that language could be considered threatening by a reasonable officer. Macy stated that the journal contained his observations and complaints regarding the treatment of offenders by staff and explained that the staff created an environment which led to prison officials and guards being injured and beaten. He stated "that if the conduct by staff continued that more staff injuries would occur." Dkt. 56 at p. 5; *see also* Dkt. 55 at p.1. Further, the journal was a "tool to communicate and relieve the unwanted and unnecessary angry feelings." Dkt. 56 at p. 2. In other words, even if Mr. Macy's version of the content of the journal were supported by admissible evidence the defendants would be entitled to judgment as a matter of law because the journal, by Mr. Macy's own account, contained language which could be interpreted as threatening and thus it was not entitled to protection under the First Amendment. In addition, there are alternative means to exercising Mr. Macy's First Amendment rights; he is free to keep a journal and write about any topic that is not threatening against facility staff members or threats against the security of the facility. If Mr. Macy wants to complain about staff conduct or other conditions, he may utilize the grievance procedure to address his complaints.

Further, even if the journal was entitled to protection under the First Amendment such that the confiscation of the journal violated Mr. Macy's First Amendment rights, the defendants are entitled to qualified immunity as to the claim for money damages against them.

> Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al–Kidd*, 563 U.S. ——, ——, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011). Under this doctrine, courts may not award damages against a government official in his personal capacity unless "the official violated a statutory or constitutional

right," and "the right was 'clearly established' at the time of the challenged conduct." *Id.*, at ——, 131 S.Ct., at 2080.

*Lane v. Franks*, 134 S.Ct. 2369, 2381 (2014). The relevant question for immunity purposes is this: Could the defendants reasonably have believed, at the time Mr. Macy's journal was confiscated, that they could confiscate a prisoner's journal when that journal contained threatening language against staff. *See e.g., Lane*, 134 S.Ct. 2381 (discussing qualified immunity). The answer to that question is yes. A prison inmate's First Amendment rights may be restricted if they are inconsistent with his status as a prisoner or because they are contrary to the legitimate penological objectives of the corrections system. *See Thornburgh v. Abbott*, 490 U.S. 401, 415 (1989) ("The regulations are expressly aimed at protecting prison security, a purpose this Court has said is 'central to all other corrections goals.'" *Id.* (*quoting Pell v. Procunier*, 417 U.S., at 823)). Mr. Macy has failed to establish that any of the Defendants deprived him of his constitutional rights or that such rights were clearly established at the time. More specifically, Mr. Macy has pointed to no case that would establish that a prisoner has a First Amendment right to write threats (or material perceived as threats) against correctional staff in his journal such that the journal cannot be confiscated. Because the law did not put any of the Defendants on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

## IV. <u>CONCLUSION</u>

It has been explained that "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El v. Britton,* 118 S. Ct. 1584, 1598 (1998). This is a vital role in the management of court dockets, in the delivery of justice to individual litigants, and in meeting society's expectations that a system of justice operate effectively. Indeed, "it is a gratuitous cruelty to parties and their witnesses to put them through the emotional

ordeal of a trial when the outcome is foreordained" and in such cases, summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir. 1983).

Mr. Macy has not identified a genuine issue of material fact as to his claims in this case, and the defendants are entitled to judgment as a matter of law. Therefore, Mr. Macy's Motion for Summary Judgment (Dkt. 40) is **DENIED** and Defendants' Motion for Summary Judgment (Dkt. 46) is **GRANTED**. Mr. Macy's request for contempt of Court (Dkt. 57) is also **DENIED.** Judgment consistent with this Entry and with the Entry of May 4, 2012, shall now issue.

**SO ORDERED.**

Date: 07/28/2014

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

CHRISTOPHER M. MACY
DOC # 956245
Pendleton Correctional Facility
Inmate Mail/Parcels
4490 West Reformatory Road
Pendleton, IN 46064

All Electronically Registered Counsel